UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT ALBERTAZZI AND NOELLA ALBERTAZZI, AS TRUSTEES OF THE ALBERTAZZI FAMILY TRUST,<br><br>Plaintiff,<br>v.<br><br>TERI A. ALBERTAZZI; JOHN D. GRIESINGER; and DOES I-X, inclusive,<br><br>Defendants. | Case No. 3:17-cv-00703-MMD-WGC<br><br>ORDER |

**I.    SUMMARY**

Before the Court is Defendants Teri A. Albertazzi and John D. Griesinger's ("Defendants") Motion to Dismiss ("Motion"). (ECF No. 4.) The Court has reviewed Plaintiffs Robert Albertazzi and Noella Albertazzi's amended response.[1] (ECF No. 10.) For the following reasons, the Court denies Defendants' Motion.

**II.   BACKGROUND**

Plaintiffs Robert and Noella Albertazzi transferred $220,000 to their daughter, Defendant Teri Albertazzi, in the summer of 2009, and the parties now dispute whether the money was a loan or a gift. According to Plaintiffs, the money was a loan. Defendant

---

[1]The Court has not considered Defendants' reply (ECF No. 12) because it was not timely filed. "The deadline to file and serve any reply in support of the motion is seven days after service of the response." LR 7-2(b). Plaintiffs filed both their initial response (ECF No. 8) and amended response (ECF No. 10) on December 22, 2017. Defendants filed their reply on January 5, 2018, fourteen days later. Accordingly, the Court denies as moot Plaintiffs' Motion to Strike (ECF No. 13) and Motion for Leave to File Sur-Reply (ECF No. 14).

Teri[2] allegedly asked to borrow money to purchase a home in Tucson, Arizona ("Arizona Property") on June 21, 2009. (ECF No. 10 at 2.) Plaintiffs then transferred a total of $220,000 to her from the Albertazzi Family Trust ("Trust"), of which Plaintiffs are both trustees. (*Id.* at 3.) Plaintiffs allege that "Defendant Teri agreed to repay Plaintiffs [the $220,000] and agreed that the Arizona Property was Plaintiffs' security for the loan." (*Id.*)

According to Defendant Teri, the money was a gift. Plaintiff Robert "delivered into the Tucson, Arizona escrow a written statement saying that all monies he provided towards the home purchase were a gift and that there was no expectation of repayment." (ECF No. 4 at 3.) Defendant Teri alleges that Plaintiff Robert "did not request, and did not receive, either a promissory note or security interest in the [Arizona Property]." (*Id.*)

Defendant Teri began to send $400 monthly payments to Plaintiff Robert in September 2009 and increased the monthly payments to $500 in September 2010. (ECF No. 10 at 3.) The parties dispute the reason for Defendant Teri's conduct. According to Plaintiffs, Defendant Teri began making payments because she had promised to repay the loan. (*See id.*) According to Defendant Teri, she began sending money to her father because he called to "tell her that he was experiencing financial difficulties" and "requested that she send him money in whatever amounts and at whatever intervals she was willing." (ECF No. 4 at 3.)

Defendant Teri allegedly executed a promissory note ("Note") several years later, on February 6, 2014, formally obligating her to repay the then-principal of $201,200. (*Id.*) Plaintiffs attached the Note to their complaint, and it appears to bear a signature reading "Teri Albertazzi." (ECF No. 1-3 at 13.) The Note contains two clauses that are important to this dispute. The first is an acceleration clause: "This Note will be repaid in consecutive monthly installments of $500.00 each on the fifth of each month commencing the month following execution of this Note until the Lender has provided the Borrower with written notice of demand and the balance owing under this Note will be paid within 30 day(s) of

---

[2]The Court will refer to the parties by their given names because many of them share the surname Albertazzi.

2

any such notice of demand." (*Id.*) The second is a choice of law clause: "This Note will be construed in accordance with and governed by the laws of the State of Nevada." (*Id.* at 14.)

Defendant Teri's husband,[3] Defendant John, allegedly executed an addendum to the Note ("Addendum") obligating him to pay the debt in the event of Defendant Teri's death. (ECF No. 10 at 4.) Plaintiffs attached the Addendum to their complaint, and it appears to bear a signature reading "John Griesinger." (ECF No. 1-3 at 15.)

Defendants dispute the authenticity of the Note and Addendum, contending that they did not sign these documents. (ECF No. 4 at 3.) They have provided affidavits in support. (ECF Nos. 4-1, 4-2.)

Defendants allegedly sold the Arizona Property in June 2016 and used the proceeds from the sale to purchase a house in Boise, Idaho ("Idaho Property"). (ECF No. 10 at 4.) Defendants allegedly did not inform Plaintiffs about the sale until January 31, 2017. (*Id.*) Plaintiffs then sent Defendants a revised promissory note with Defendant's Idaho Property listed as security for the balance of the loan. (*Id.* at 4-5.) Defendants allegedly refused to execute the revised promissory note. (*Id.* at 5.) Plaintiffs then issued Defendants a written demand for payment in full pursuant to the Note's acceleration clause. (*Id.*) Defendants allegedly breached the terms of the Note by failing to pay the Note in full. (*Id.*)

Plaintiffs filed this action in Nevada state court alleging claims for breach of contract, money had and received, unjust enrichment, and fraudulent concealment on November 14, 2017. (ECF No. 1-3 at 3-11.) Defendants removed based on diversity jurisdiction. (ECF No. 1.) Defendants now move to dismiss the action for lack of personal jurisdiction, or in the alternative to transfer venue. (ECF No. 4 at 1.)

///

///

---

[3]Defendant Teri married Defendant John Griesinger in 2012 in Stateline, Nevada. (ECF No. 10 at 4.) Plaintiffs do not contend that Defendant Teri's visit to Nevada for the wedding grounds general jurisdiction. (*See id.* at 9.)

3

## III. LEGAL STANDARD

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansin*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1127 (9th Cir. 2010) (internal quotation marks omitted). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys.*, *Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but it may resolve factual disputes in the plaintiff's favor, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

## IV. DISCUSSION

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). Since "Nevada's long-arm statute, NRS § 14.065, reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *See Baker v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due process." *Chan*, 39 F.3d at 1404–05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction.

4

### A. General Jurisdiction

General jurisdiction in this case requires that Defendants engage in continuous and systematic general business contacts that approximate physical presence in Nevada. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011). "The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'" *Id.* at 1074 (quoting *Schwarzenegger*, 374 F.3d at 801). "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, [courts] consider their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" *Id.* (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006)).

Plaintiffs argue that this Court has general jurisdiction over Defendants because Defendant Teri mailed monthly payments to Plaintiffs' mailing address in Stateline, Nevada. (*See* ECF No. 10 at 9.) The Court disagrees based on the Ninth Circuit Court of Appeals' decision in *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376 (9th Cir. 1981). In *Kransco*, a California corporation ("Kransco") initiated a patent infringement action in California against Bernhard Markwitz, a citizen and resident of West Germany, relating to an inflatable pool toy sold by Markwitz's company. *Id.* Markwitz did not maintain an office, home, or personnel in California, though he mailed several letters to Kransco charging it with infringement of his patent. *Id.* Markwitz also visited California to attend a trade show for swimming goods manufacturers where his company promoted and took orders for the inflatable pool toys. *Id.* The Ninth Circuit summarily declined to find general jurisdiction: "It is clear that appellee Markwitz has not engaged in 'substantial' or 'continuous and systematic' activities in California so as to invoke general jurisdiction." *Id.* Like Markwitz, Defendant Teri sent mail to the forum state, but Defendant Teri's mail constitutes even less significant contact than the letters Markwitz sent. Defendant Teri sent payments,
///

whereas Markwitz sent letters describing legal duties and risks. Accordingly, the Court holds that Defendant Teri's payments do not form a basis for general jurisdiction.

### B. Specific Jurisdiction

Specific jurisdiction exists where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts." *CollegeSource*, 653 F.3d at 1075. In the Ninth Circuit, courts use a three-prong test to determine whether specific jurisdiction exists over a particular cause of action: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.* at 1076 (quoting *Schwarzenegger*, 374 F.3d at 802). The first prong, alternatively called purposeful availment or purposeful direction, is often determinative. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). In addition, the party asserting jurisdiction bears the burden of demonstrating only the first two prongs. *CollegeSource*, 653 F.3d at 1076 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If it does so, the burden shifts to the party challenging jurisdiction to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Plaintiffs have demonstrated the first element by alleging that Defendants consummated a transaction with residents of Nevada—execution of the Note and Addendum. (ECF No. 10 at 7.) Although Defendants contend that they never signed the Note or Addendum and provide signed affidavits in support (ECF No. 4-1 at 3; ECF No. 4-2 at 2-3), the Court resolves this factual dispute in favor of Plaintiffs. *Pebble Beach*, 453 F.3d at 1154; *see also Data Disc*, 557 F.2d at 1285. Having resolved this factual dispute
///

in favor of Plaintiffs, it is clear that Defendants consummated a transaction with residents of Nevada.

Plaintiffs have also sufficiently demonstrated the second element—that their claims arise out of or relate to Defendants' forum-related activities. Plaintiffs allege four claims against Defendants: breach of contract, money had and received, unjust enrichment, and fraudulent concealment. (ECF No. 1-3 at 7-10.) Each of these claims arises from or relates to obligations and liabilities imposed by the Note and Addendum.[4]

Plaintiffs have carried their burden of satisfying the first two prongs. Accordingly, the burden shifts to Defendants to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *CollegeSource*, 653 F.3d at 1076. In determining reasonableness, the Court must consider: (1) the extent of Defendants' purposeful injection into the forum state's affairs; (2) the burden on Defendants of defending in the forum; (3) the extent of conflict with the sovereignty of Defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to Plaintiffs' interest in convenient and effective relief; and (7) the existence of an alternative forum. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). The court must balance and weigh all seven factors; none is dispositive. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995).

The first, fourth, fifth, and sixth factors weigh in favor of retaining jurisdiction, while only the second and seventh factors support dismissal.[5] Regarding the first factor, Defendants sought to avail themselves of the protections of Nevada law when they executed the Note and Addendum containing (or incorporating by reference) a Nevada choice of law provision. Regarding the fourth factor, Nevada has an interest in adjudicating the dispute because enforcement of the Note and Addendum will involve interpretation of

---

[4] Even if one of the claims did not relate to the Note or Addendum, this Court "may exercise pendent personal jurisdiction over any claims that arise out of the same common nucleus of operative facts as the claim for which jurisdiction exists." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation and internal quotation marks omitted).

[5] The third factor does not weigh clearly in either direction because there are no significant sovereignty concerns.

7

Nevada law. Regarding the fifth factor, such a dispute is suited to the most efficient judicial resolution in Nevada because courts in Nevada are more familiar with Nevada law than those that are not. Regarding the sixth factor, resolution of this dispute in Nevada is important to Plaintiffs because they reside in Nevada. Only two factors support dismissal. Defendants wish to litigate in Idaho because they reside in Idaho, and Idaho is a possible alternative forum. Defendants have not presented a "compelling case" for declining to exercise jurisdiction. Accordingly, the Court finds that specific jurisdiction exists.

**C.     Transfer**

Defendants request to transfer venue to Idaho under 28 U.S.C. §§ 1404(a) and 1406(a). (ECF No. 4 at 11.) However, § 1406(a) allows a court to dismiss or transfer a case only where the case lays "venue in the wrong division or district." For example, courts have used § 1406(a) to dismiss or transfer a case where the parties removed to the wrong district court, *LNV Corp. v. STK Financial, LLC*, C 11–00025, 2011 WL 4345193, at *2 (N.D. Cal. Sept. 14, 2011), or where the court finds improper venue under Rule 12(b)(3), *Ambriz v. Coca-Cola Co.*, 13-cv-03539, 2014 WL 296159, at *7 (N.D. Cal. Jan. 27, 2014). Neither of those situations is present in this case. Defendants further argue for transfer under the factors that are considered in a § 1404(a) analysis. The Court thus considers Defendants' motion pursuant to § 1404(a).

A district court "may transfer any civil action to any other district or division where it might have been brought" for the "convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005) (citations and quotation marks omitted).

Motions to transfer venue involve "an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted). "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is

appropriate in a particular case." *Jones*, 211 F.3d at 498. "For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 498-99. "[T]he presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis." *Id.* at 499. The burden of proof is on the moving party. *See, e.g.*, *id.*; *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

Each of these factors either weighs against transferring venue or does not weigh clearly in either direction. The first factor does not weigh clearly in either direction because it is unclear where the agreements were negotiated and executed. The second factor weighs against transferring venue because the Note and Addendum are governed by Nevada law. The third factor weighs against transferring venue because Plaintiffs filed their original complaint in Nevada state court. The fourth factor weighs against transferring venue because Defendants have had sufficient contacts with Nevada to ground specific personal jurisdiction. The fifth factor weighs against transferring venue because the claims in this case arose out of Defendants' contacts with Nevada. The sixth factor does not weigh clearly in either direction. Defendants contend that witnesses to the purchase of the Idaho Property are located in Idaho, but Defendants have not explained why witnesses to the purchase of the Idaho Property will be important to this litigation, particularly given that the crux of this lawsuit is whether the money at issue was a loan or a gift. The seventh factor does not clearly weigh in either direction—it is not clear that witnesses related to the purchase of the Idaho Property will be important to this litigation. The eighth factor does not clearly weigh in either direction. The conflict between the parties centers on the validity of the Note and Addendum. While Defendants would have to travel from Idaho to Nevada to testify in person about the Note and Addendum, Plaintiffs would bear a similar

burden if the case were transferred to Idaho. Finally, the presence of the Nevada choice of law clause weighs against transferring venue (though not as much as a forum selection clause that expressly indicates where the dispute should be resolved). Accordingly, the Court denies Defendants' request to transfer venue.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants' Motion to Dismiss (ECF No. 4) is denied.

It is further ordered that Plaintiffs' Motion to Strike (ECF No. 13) and Motion for Leave to File a Sur-Reply (ECF No. 14) are denied as moot.

DATED THIS 17th day of January 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE