UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROBERT ALBERTAZZI AND NOELLA ALBERTAZZI, AS TRUSTEES OF THE ALBERTAZZI FAMILY TRUST,

Plaintiffs/Counter-Defendants,

v.

TERI A. ALBERTAZZI; JOHN D. GRIESINGER; and DOES I-X, inclusive,

Defendants/Counter-Plaintiffs.

Case No. 3:17-cv-00703-MMD-WGC

ORDER

**I.  SUMMARY**

Before the Court is Plaintiffs/Counter-Defendants Robert and Noella Albertazzi's (collectively, "Plaintiffs") motion to dismiss counterclaims ("Motion") (ECF No. 20). The Court has reviewed Defendants/Counter-Plaintiffs Teri A. Albertazzi and John D. Griesinger's (collectively, "Defendants") response (ECF No. 21) and Plaintiffs' reply (ECF No. 23). For the following reasons, the Court will grant Plaintiffs' Motion.

**II.  RELEVANT BACKGROUND**

The Court incorporates herein the facts as described in the Court's prior order (ECF No. 15 at 1-3). Plaintiffs assert claims for breach of contract, money had and received, unjust enrichment, and fraudulent concealment. (ECF No. 1-3 at 3-11.)

Defendants asserted four counterclaims: (1) petition to assume jurisdiction over irrevocable trust; to compel accounting; to compel distributions required by the trust; and

///

to remove, surcharge, and replace trustee ("Trust Petition"); (2) abuse of process; (3) libel and slander per se; and (4) invasion of privacy. (ECF No. 19 at 20-25.)

In support of their first counterclaim (the Trust Petition), Defendants allege the following facts. Defendant Teri's[1] grandparents established an irrevocable trust ("Teri Trust") naming Defendant Teri as the "primary beneficiary" in December 1996. (*Id.* at 16.) The Teri Trust established a schedule for certain distributions of its assets: Teri was supposed to receive the trust's accumulated income free of trust at age 21; Teri would then receive twenty percent of the principal at ages 30, 35, 40, and 45. (*Id.*) Teri is 45 but has never received any of these distributions. (*Id.* at 17.)

The initial co-trustees of the Teri Trust were William T. Eckhoff and Thomas H. Knopf. (*Id.* at 16.) However, Plaintiff Noella was appointed as co-trustee of the Teri Trust when Mr. Eckhoff resigned in March 2014. (*Id.* at 17.) Plaintiff Noella became the sole trustee when Mr. Knopf resigned in November 2016. (*Id.*)

Teri requested a complete accounting for the Teri Trust on multiple occasions but never received one. (*Id.*) Teri also requested information from Plaintiffs regarding the terms of the Teri Trust in 2010, 2012, 2013, 2015, and 2016 but "was rebuffed with angry responses." (*Id.* at 18.) Although Teri has never received a complete accounting, she discovered that one of the accounts within the Teri Trust contained about $310,000 in December 2005 but only about $84,000 by December 2009. (*Id.* at 17.) Noella eventually provided Teri's counsel with a copy of the trust agreement for the Teri Trust, but Teri has still never received a copy of Schedule A, which lists the assets initially conveyed to the Trust. (*Id.* at 19.)

The Teri Trust contains a choice-of-law provision requiring the application of California law. (*Id.* at 16.)

In support of their second counterclaim (abuse of process), Defendants allege that the promissory note and addendum forming the basis of Plaintiffs' claims contain

---

[1] The Court will refer to the Albertazzi parties by their given names to avoid ambiguity.

2

inauthentic signatures and that Plaintiffs filed their Complaint "for an improper ulterior motive, including the motive of discouraging Teri from seeking an accounting with respect to [the Teri Trust] and the motive of vexing [Defendants]." (*Id.* at 22-23.)

In support of their third and fourth counterclaims (libel and slander per se and invasion of privacy), Defendants allege that Plaintiff Robert accessed South Lake Tahoe Police Department files and caused notations to be made in the files that Defendant Mr. Griesinger had been stopped by the South Lake Tahoe Police Department on two occasions when in fact Mr. Griesinger was in Tucson, Arizona. (*Id.* at 23.) Robert's conduct "flagged Mr. Griesinger's Top Secret / Special Access Program security clearance that was in good standing and caused a review to begin." (*Id.* at 24.) As a result of the investigation, Mr. Griesinger lost his security clearance, could not complete his active duty orders, and reverted to a drill status guardsman. (*Id.*) Mr. Griesinger was unable to retain his GS-15 civil service employee position. (*Id.*)

Plaintiffs now move to dismiss all of Defendants' counterclaims.

## III.  LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled

3

to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief. *Id.* at 679. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

**IV. DISCUSSION**

**A. SUBJECT MATTER JURISDICTION**

Plaintiffs first argue that the Court should dismiss Defendants' counterclaims because the Court lacks subject matter jurisdiction to hear them. (ECF No. 20 at 5.) Defendants argue that the Court has supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367 as well as independent diversity jurisdiction over the counterclaims under 28 U.S.C. § 1332. (ECF No. 21 at 8.)

"All counterclaims are either compulsory or permissive." *Painter v. Atwood*, No. 2:12-CV-1215-JCM-RJJ, 2013 WL 2355507, at *2 (D. Nev. May 29, 2013). A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). The "logical relationship test" dictates whether a counterclaim is compulsory:

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same

4

> operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005) (quoting *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992)); *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1066 (E.D. Cal. 2005) ("Under this test, the court analyzes whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one suit.") (internal citations, quotations, and alterations omitted).

"All claims that are not compulsory are permissive." *Painter*, 2013 WL 2355507, at *2. "A pleading may state as a counterclaim against an opposing party any claim that is not compulsory." Fed. R. Civ. P. 13(b). In addition, the advisory committee notes to the 2007 amendment of Rule 13 require "[b]oth as a matter of intended meaning and current practice, a party may state as a permissive counterclaim a claim that does grow out of the same transaction or occurrence as an opposing party's claim even though one of the exceptions in Rule 13(a) means the claim is not a compulsory counterclaim."

28 U.S.C. § 1367(a) permits federal district courts to exercise supplemental jurisdiction over state law claims when (1) the federal district court has original jurisdiction over the action and (2) the other claims are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III.

Regarding the first counterclaim, Defendants argue that their Trust Petition arises out of the same transaction or occurrence as Plaintiffs' claims because the allegedly fabricated promissory note was part of a scheme designed to discourage Defendant Teri from seeking an accounting of the Teri Trust. (ECF No. 21 at 9.) In addition, Defendants allege that the money Plaintiffs seek through their claims is actually money taken from the Teri Trust. (*Id.*) Plaintiffs argue that the sequence of events in this case contradicts Defendants' theory—Plaintiffs presented a revised promissory note to Defendants "many months" before Defendants ever asked for an accounting. (*See* ECF No. 23 at 2-3.)

///

The Court finds that the parties' alleged sequence of events taken alone does not demonstrate a logical relationship between Defendants' first counterclaim and Plaintiffs' claims. Defendants argue that the Court may infer Plaintiffs' intent to deter Defendant Teri from the following sequence of events. Defendant Teri asked Plaintiffs for information "regarding the terms of the Teri Trust" in 2010, 2012, and 2013 but was "rebuffed with angry responses." (ECF No. 21 at 9; *see also* ECF No. 19 at 18.) Plaintiff Robert then asked Defendants Teri and Mr. Griesinger to sign a promissory note in October 2013. (ECF No. 21 at 9; *see also* ECF No. 19 at 18.) Defendant Teri again asked Plaintiffs for information regarding the terms of the Teri Trust in 2015 and 2016, and Plaintiff Robert again asked Defendants Teri and Mr. Griesinger to sign promissory notes in January 2017. (ECF No. 19 at 18.) Defendant Teri then made a written demand on Plaintiff Noella for an accounting in April 2017, shortly after which Plaintiffs sent demands for payment on the allegedly fabricated promissory note to Defendant Teri. (*Id.*)

Defendants' theory is difficult to accept for several reasons. First, it is not clear that Defendant Teri specifically sought an accounting in 2010, 2012, or 2013. Defendants only allege that Defendant Teri sought information "regarding the terms of the Teri Trust." It is difficult to understand Plaintiff Robert's 2013 promissory note request as an effort to deter Defendant Teri from seeking an accounting if Defendant Teri had never actually sought an accounting. Second, years elapsed between the parties' respective requests. The span of time separating each of the events alleged suggests that they are unrelated. Third, the repetitive nature of the parties' respective requests suggests that they are unrelated— neither parties' requests seemed to have any effect on the other. While the force of the parties' respective requests seemingly escalated in tandem, parallel conduct does not necessarily imply a causal relationship. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). Finally, while Defendants allege—on information and belief—that the money at issue in this case may have come from the Teri Trust, this allegation (to the extent that it constitutes an allegation) is insufficient to establish a logical relationship. For these
///

reasons, the Court finds that Defendants' first counterclaim is not logically related to Plaintiffs' claims and therefore does not constitute a compulsory counterclaim.

As such, Defendants' first counterclaim must be dismissed unless the Court has an independent jurisdictional basis to hear it. *See, e.g.*, *Taylor v. Bryant, Inc.*, 275 F. Supp. 2d 1305, 1306 (D. Nev. 2003). Defendants argue that the first counterclaim lies within the Court's diversity jurisdiction because the amount in controversy exceeds $75,000.[2] (ECF No. 21 at 11.) Plaintiffs argue that the amount in controversy does not exceed $75,000 because Plaintiffs' allegations regarding lost trust assets predate Plaintiff Noella's appointment as administrator of the trust. (ECF No. 23 at 3.) The Court agrees with Plaintiffs. Defendants allege changes in the value of certain trust accounts between 2005 and 2009, but Plaintiff Noella was not appointed as administrator until 2014. (ECF No. 19 at 17-18.) Given that a trustee cannot be liable for the breach of trust of a previous trustee, Plaintiffs have not shown that the amount in controversy with respect to claims against Noella more likely than not exceed $75,000. *See* Restatement (Second) of Trusts § 223 ("A trustee is not liable to the beneficiary for a breach of trust committed by a predecessor trustee.").

Accordingly, the Court finds that it lacks an independent jurisdictional basis to hear Defendants' first counterclaim.

Regarding the second counterclaim (abuse of process), Plaintiffs do not dispute that it is a compulsory counterclaim. (*See* ECF No. 20 at 6 ("Defendants' first, third, and fourth counterclaims are not compulsory.") Given that the claim obviously arises out of the same occurrence that forms the basis of Plaintiffs' lawsuit—Defendants' alleged failure to make payment on the allegedly fabricated promissory note—the Court will exercise supplemental jurisdiction over this claim.

Regarding the third and fourth counterclaims (libel per se and invasion of privacy), Defendants argue that these claims are related to Plaintiffs' claims in that both sets of claims involve Robert's use of fraudulent devices for improper purposes. (ECF No. 21 at

---

[2]The parties do not dispute that complete diversity exists.

10.) Plaintiffs seem to have misunderstood Defendants' argument, as they state "Defendants do not attempt to argue that their third and fourth counterclaims arise out of the same transaction or occurrence as Plaintiffs' claims." (ECF No. 23 at 3.) Nevertheless, the Court finds that there is no logical relationship between Defendants' third and fourth counterclaims and Plaintiffs' claims. Plaintiffs' claims are based on Defendants' purported failure to make payment on a promissory note, while Defendants' third and fourth counterclaims are based on Plaintiff Robert's alleged doctoring of police records. While both claims may involve deception, the Court declines to find a logical relationship between the claims based on such an abstract similarity. Accordingly, the Court will not exercise supplemental jurisdiction over Defendants' third and fourth counterclaims.

Nevertheless, the Court may exercise independent jurisdiction over the third and fourth counterclaims if a basis for such jurisdiction exists. Defendants argue that the Court may exercise diversity jurisdiction to hear the third and fourth counterclaims. (ECF No. 21 at 11.) Defendants argue that Mr. Griesinger's damages in connection with the third and fourth counterclaims exceed $11 million in lost income. (*Id.*) Plaintiffs argue that Defendants have not provided an explanation for this figure. (ECF No. 23 at 4.) The Court agrees that Defendants' allegation regarding $11 million in lost income is unsupported. Accordingly, the Court does not find by a preponderance of the evidence that Defendants have satisfied the amount in controversy requirement on their third and fourth counterclaims. Accordingly, the Court will dismiss these counterclaims without prejudice.

**B.     ADEQUACY OF PLEADING**

The Court will consider only whether Defendants have adequately pleaded their second counterclaim—for abuse of process—because the Court will dismiss the first, third, and fourth counterclaims for lack of jurisdiction as discussed *supra*.

"To support an abuse of process claim, a claimant must show (1) an ulterior purpose by the [party abusing the process] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 519 (Nev. 2015)

(internal quotation marks omitted, alterations in original). In support of this counterclaim, Defendants allege that Plaintiffs had the ulterior purpose of deterring Teri from seeking an accounting and vexing her and her husband. (ECF No. 19 at 22-23.) As discussed above, Defendants have not adequately pleaded facts to support their conclusory allegation that Plaintiffs intended to deter Defendant Teri from seeking an accounting. Accordingly, the Court will dismiss Defendants' second counterclaim.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Plaintiffs/Counter-Defendants' Motion to Dismiss (ECF No. 20) is granted. Defendants/Counter-Plaintiffs' counterclaims are dismissed without prejudice.

DATED THIS 24th day of August 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE